IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA

V                                          CASE NO.: 1:21-CR-00107-1

ERIC ZACHARY MALY

### EMERGENCY MOTION FOR IMMEDIATE RELEASE PURSUANT TO 18 U.S.C. 3582(c)(1)(A) COMPASSIONATE RELEASE

COMES NOW, the defendant, Eric Zachary Maly (hereinafter "Maly" or "defendant") pro se' and in absentia with this "EMERGENCY MOTION FOR IMMEDIATE RELEASE PURSUANT TO 18 U.S.C. 3582(c)(1)(A) "COMPASSIONATE RELEASE".

Pleadings by pro se' defendants are to be more liberally construed than those brought forth by attorneys. "Pro se' filings are held to less stringent standards than formal pleadings drafted by lawyers." (Fowlkes v. Nelsen 34 F 4th 258. 272 4th Cir 2022). "The court must construe pro se' pleadings liberally" (Bing v. Bravo Sys LLC 959 F. 3d 605. 618 4th Cir 2020).

### BACKGROUND

On October 12, 2021, Defendant Maly was sentenced to 60 months of imprisonment after entering a plea of guilty to one count of receipt of child pornography pursuant to 18:2252A(A)(2)(A) & (B)(1). Maly remained on pre-trial home confinement after his plea hearing, through sentencing and until he self surrendered to FCI Butner Low in Butner NC on December 7, 2021. Maly had zero infractions during his pre-trial home confinement. In fact his pre-trial probation officer, Officer Jackson, would testify that he was easy to work with, followed directions and made sure that he reported early prior to trips out of his home for dental procedures. It was these observations by the probation officer that led this honorable court to allow Maly to remain on home confinement until reporting to Butner. He asked for no extensions and reported immediately as directed. The court can now look to Maly's pre-trial reports and his progress in prison under Concepcion v. United States. Maly has maintained clear conduct, serves as a peer leader, and works as a GED Tutor.

### EMERGENCY DESIGNATION

The 4th Circuit holds an "emergency designation" for matters such as a motion for immediate release pursuant to 18 USA 3582(c)(1)(A), must meet a threshold whereby the defendant, an inmate in Federal Custody, is in imminent danger. On September 24, 2023 a report by National Public Radio's Meg Anderson was broadcast nationwide highlighting the gross

$-1-$

negligence perpetuated by the Federal Bureau of Prison's medical staff, particularly at FCC Butner, where Maly is housed. The initial NPR report (see exhibit "A") states that the BOP is negligent in their service to inmates often leaving them for months without proper treatment. Not only is the BOP negligent, the NPR story cites that the BOP has been without accreditation from the American Hospital Association since 2021. According to the report, and research, the accreditation has not been renewed in two years which is willful negligence and wanton disregard for the lives in BOP care. As this has come to light, and Maly (only 37) has been suffering from severe back and neck pain from a hereditary condition called Ehlers-Danlos Syndrome that the BOP refuses to test for (see Exhibit B). It's because of this gross wanton disregard for human lives that Maly respectfully moves this court to consider this motion under an emergency designation; and as such, Maly followed the protocol set forth in the First Step Act by notifying the warden of his intention to seek Compassionate Release in court. In accordance with policy with an emergency designation Maly only need wait 5 days instead of 30 days to bring forth this motion today.

## MALY IS FREE TO PROCEED ON THE MERITS

Maly is free to proceed on the merits. As outlined above Maly has waited the allotted 5 day period because of the emergency designation to move forward. The First Step Act of 2018 modified the Compassionate Release statute by allowing inmate defendants in the custody of the Federal Bureau of Prisons, "to bring their own motion for Compassionate Release before the court after fully exhausting their administrative remedy process or after 30 days has lapsed after notifying the warden of his/her institution of their intent to seek compassionate release, whichever is earlier". (Pub L 115-335 First Step Act of 2018). Maly has proceeded seeking emergency designation which shortens the waiting period to 5 days as outlined above.

## STANDARD OF REVIEW

18 USC 3582 as amended by the First Step Act states that courts generally cannot alter or modify a term of imprisonment after imposition, but the court can reduce an inmate's term of imprisonment upon a motion for sentence modification from the Bureau of Prisons or from a prisoner where the prisoner has exhausted administrative remedies in accordance with the policy above.

The court can grant a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction and the reduction is consistent with applicable policy statements issued by the Sentencing Commission" (18 U.S.C. 3582(c)(1)(A)(i). Before granting a sentence reduction, the court must consider the factors in 3553(a), if applicable and determine whether they support a reduction. In general, the defendant has the burden to show circumstances meeting the test for a reduction of sentence. (United States v. Hamilton, 715 F. 3d 328, 337 (4th Cir 2013).

-2-

"Courts are generally forbidden altering a sentence once it becomes final" (United States v. Bryan 996 F.3d 1243, 1251, 4th Cir 2021). Exceptions to this general prohibition lie "only when authorized by statute or rule" (United States v. Puentes, 803 F.3d 597, 606 4th Cir 2015). The one exception (in any circuit) is the "compassionate release" provision found at 18 U.S.C. 3582(c)(1)(A). The Compassionate Release statute is governed at 18 U.S.C. 3582(c)(1)(A) and within the United States Sentencing Guidelines at section 1B1.13. The provision generally provides for conditions consistent with 1B1.13 "which delineates four qualifying categories (A) a defendant's medical condition, which includes a "serious physical or medical condition" for which the defendant is not expected to recover from; (B) a defendant's age; (C) a defendant's family circumstances; (D) a catch-all provision for other reasons as determined by the Director of Prisons or the District Court.

The fourth provision (D), the catch-all provision, is referred to in the court as "extraordinary and compelling circumstances", whereas the threshold for that provision is that the defendant's circumstances for release are both extraordinary and compelling. "Congress has directed the United States Sentencing Commission to promulgate policy statements describing what should be considered extraordinary and compelling reasons for sentence reductions". In the 4th Circuit the decision on whether a circumstance is extraordinary and compelling lays with the District Court. Therefore in the 4th Circuit "District Courts may consider any extraordinary and compelling reason for release that a defendant may raise" U.S. v. Sawyer June 14, 2021; 2021 U.S. Dist Lexis 137236 (ed N.C. 5:15-cr-160-BO-1).

MALY HAS MANY CIRCUMSTANCES THAT ARE BOTH EXTRAORDINARY AND COMPELLING

Later, herein, we will demonstrate that Maly's 3553(a) factors had surpassed the point where he is any risk to the community even prior to sentencing. Here we look into the circumstances Maly faces which are both extraordinary and compelling:

For starters, Maly stands at 5'9" tall and 125 lbs. and self identifies, as reported to the Bureau of Prisons, as both Pansexual (bisexual) and gender fluid. Maly presents with overtly obvious feminine features in an environment that is hyper-masculine in nature. He has shoulder length brown hair often kept in a pony tail and very little if any facial hair. In United States v. Lara (945 F 2d 526, 905 F. 2d 599, 1990)(upholding departure for defendant's diminutive size, immature appearance, and bisexual orientaion made him a potential candidate for victimization), the court found that "extreme vulnerability of a criminal defendant is a proper ground for a departure". As will be discussed later in Maly's 3553 (a) factors this was not addressed at sentencing because the defendant was more concerned with taking responsibility for his actions than his safety or vulnerability. Maly's specific vulnerabilities match Lara's point for point. In another case U.S. v. Gonzales U.S. app Lexis 29618 1st Circuit court of appeals, July 1, 1992, the court ruled that the "...defendant's youthful appearance rendered him particularly vulnerable to victimization in prison, that this vulnerability was a circumstance of a kind or to a degree not adequately considered by the sentencing commission and that hence a downward departure was

warranted." To bring this issue to light, at FCI Butner Low, a similarly situated defendant, a 19 year old man who also bares many similar feminine features, was raped just three beds down from Maly. (United States v. Hurd E.D. VA, Richmond, 4:22-CR-78, 4th Cir Aug 2023). Since the time of Hurd's sexual assault Maly has slept with "one eye open". The health, safety and security of an inmate is supposed to be the number one priority for the Bureau of Prisons however as seen in the aforementioned case and confirmed by exhibits in that case from the investigations division of Butner, inmates of similar size and stature go unprotected.

Maly was originally arrested for the same crime by the state of North Carolina in 2020. At that time, he was released on bond and continued to work in a work from home position, going to medical/dental appointments and eventually moving back home with his parents and live-in partner. Federal authorities picked the charges up in the following year where Maly continued on O.R. bond through his self-report date. He attended all of his pschyology appointments and lived beyond reproach. In prison, (as will be discussed later) Maly held a job as a GED tutor; took hundreds of hours of evidence-based recidivism reducing programs and other productive activities; and maintained clear conduct. To say that rehabilitative efforts have worked for Maly may be underestimating the person Maly has become today. A defendant's behavior prior to, and in prison have also often been considered extraordinary and compelling. "However the record here includes the fact that Rice has shown good behavior in prison and very strong rehabilitation"(U.S. v. Rice U.S. Dist Lexis 103030, June 12, 2023, E.D.VA, Richmond). Further, "As this court and many others have previously held, courts have the discretion to afford relief to defendants under 3582(c)(1)(a) even when circumstances do not fit squarely within the current policy statements of the sentencing comission as reflected in U.S.S.G 1.B.13 (see U.S. v. Maumau 2020 U.S. dist Lexis 28392 d. Utah Feb 18, 2020, listing caes holding same) while the applicable policy statement provides helpful guidance it does not constrain the courts independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction. (U.S. v. Beck 425 F. Spp 3d 573, 579 M.D.N.C. 2019, Eagles). "Even considering the government's contentions, the court finds that the rehabilitation that Mr. Lara achieved in prison is extraordinary and compelling." (U.S. app Lexis 35899, U.S. v. Lara, March 1, 2023.)

Now we begin to look at Maly's health issues which are also both extraordinary and compelling. Maly arrived at FCI Butner Low on December 7, 2021 and at that time he reported to medical, at intake, that he and his family have a history of hypothyroidism, a serious thyroid condition. Hypothyroidism in his family has led to both Thyroid Cancer and Hashimoto's (an autoimmune thyroid disorder) in several different family members including his mother. Maly often finds that he has to remind medical staff to run blood panels to monitor his thyroid issue (see exhibit C). These panels are supposed to occur every 3 months and the BOP medical staff often waits 6 months or more, needing prompting.

As to the hypothyroidism, Maly is on daily medication. He also should be recieving blood panels at a minimum of every 90 days and be under the constant monitored care of an endocrinologist. However, Maly has been at FCI Butner Low for nearly two years and has not been seen by an endocrinologist one time. In addition, because he takes medication daily to maintain his thyroid, under policy he should be at Medical Care Level II. However the BOP has him misclassified as a Medical Care Level I since his arrival December 7, 2021. In addition, as referenced earlier Maly identifies as genderfluid which is a sub-class of transgender according to the BOP. The BOP's own programming statement for transgender inmates automatically puts them at MH2 (Mental Health Care Level II). Again, Maly is misclassified as MH1. (see BOP Programming statement 5200.04, Transgender Offender Manual.)

Maly displays many of the symptoms of an incurable disease called Ehlers-Danlos Syndrome (EDS), a genetic condition (see exhibit C). As of late, Maly has had severe neck, shoulder and back pain, also attributed to EDS. On a visit in June 2023, Maly's mother notified him that he most likely has EDS and should be tested for it, the BOP refuses to do genetic testing. As the pain continues The BOP eventually performed x-rays but now 3 months later, there has been no follow up. In addition, in October 2022, Maly fell on the recreation yard and broke his collarbone in four places. After clearing him to go back to his housing unit after the weekend injury, it took the BOP nearly 4 days to diagnose the broken collarbone. At his insistence, Maly was taken for imaging at the FMC, where the radiologist immediately called for an orthopedic doctor's input while Maly was still on the x-ray table. This nonchalant and willful disregard for inmate's treatment is rampant in the Bureau of Prisons as reported by National Public Radio on September 24, 2023. "In March 2022 the Department of Justice Inspector General's audit of the BOP's contract with a medical service contractor at Butner found the BOP "did not have a reliable, consistent, process in place to evaluate the timeliness or quality of inmate healthcare". (NPR 9/24/23 "1 in 4 inmate deaths happen at the same Federal Prison Why?"

Maly suffers from multiple "extraordinary and compelling" circumstances that far surpass the threshold for "extraordinary and compelling circumstances" as defined by the 4th Circuit for compassionate release. 1) Maly is small in stature, non-gender conforming (gender fluid), pan (bi) sexual and vulnerable. 2) Maly's pre-trial and post conviction behavior and actions are both extraordinary and compelling. (3) Maly's hypothyroidism has often been overlooked waiting more than 6 months at times to have blood panels taken and follow up. 4) Maly is being held at the FCC Butner complex and has not seen the complex's endocrinologist since his arrival, nearly two years ago. 5) Maly's care level has been set at Medical Care Level 1 since his arrival while any inmate, according to policy, who is on a daily maintenance medication suffers from a chronic care condition and is therefore, at least, Medical Care Level 2 (Per the BOP's own policy). 5) It is clear that Maly suffers from Ehler's-Danlos Syndrome that has resulted, in debilitating conditions, meanwhile the BOP refuses to test for the condition that has so clearly manifest. 6) FCC Butner, a medical facility, has been without medical accreditation,

and lying about it since 2021.

This clear lack of medical care that Maly suffers from is rampant across the Butner Federal Correctional Complex, Maly's biggest concern, alongside hundreds of similarly situated inmates at Butner, is that without the proper accreditation for the last 2 years, how can safe and effective healthcare be expected? As mentioned above, Maly recently had imaging done on his back and neck. Not only has he gone without a follow up consult, but there are many instances reported in this Circuit, whereas inmates have had routine procedures under the care of FCC Butner and ended up either crippled or even worse, dead. In the record both the probation office and his psychosexual evaluation have said they supported a downward departure. Herein lies the fact that should Maly serve out the remainder of his sentence and need to have this surgery at, FCC Butner, he has a fairly strong chance to end up further injured or dead and clearly Judge Schroeder did not sentence Maly to disfigurement or death.

"Congress has specified that rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason for sentence reduction. However, the Fourth Circuit has recognized that successful rehabilitative efforts is "one among other factors under 3582(c)(1)(A) that support finding extraordinary and compelling reasons to grant relief. (McCoy 981 F.3d at 286 n.9 upholding rehabilitation shown through education, vocational achievements and payment of restitution as a factor for contributing to extraordinary and compelling reasons for sentence reduction.)

Maly has taken over 300 hours of programming including "evidence based recidivism reducing programs", vocational technology (carpentry and core class), and adult continuing education courses. He has also participated in various First Step Act qualifying classes even though he receives no sentence reduction benefit others receive.

Maly has several factors that when considered in the totality of the circumstances far exceed the threshold for "extraordinary and compelling" circumstances as defined by the 4th Circuit. In addition, his 3553(A) factors overwhelmingly support compassionate release. (US v. Ricketts U.S. Dist Lexis 1099033, ED VA, 2023).

MALY'S 3553(a) SENTENCING FACTORS HAVE SUPPORTED THIS MOTION SINCE PRIOR TO SENTENCING

Every once in a while this honorable court comes across a defendant who is facing a mandatory minimum where it is clear that, if possible, the defendant should be spared by a downward departure. This is further complicated by the fact that every other crime in America has the ability for the insertion of a "Safety Valve" provision whereas the defendant would be eligible to receive a guideline sentence rather than a mandatory, statutory, minimum sentence. This is due to the antiquated laws, which this court knows all too well, are evident in these kind of crimes. Maly pled guilty, to receipt of child pornography after downloading picture sets from social media that included pictures of underage people. Maly did not solicit, entice, produce, or distribute "child pornography". It is also important to understand that Maly has only 1 custody

-6-

point in the BOP. That +1 point designation for any other defendant charged with any other crime outside of a perceived "sex offense" would be indicative of a camp or home confinement designation. The custody score is a multi-faceted scoring system that the Bureau uses to classify inmates according to the programmatic, security, and living needs that inmate has (see BOP Programming Statement P5100.08.). Maly is classified at the lowest level. Both Maly's psychosexual evaluation and his PSR both showed Maly as zero risk to the community.

In order to grant a defendant "Compassionate Release" the district court must clear three thresholds: 1) Is the defendant able to be considered on the merits. 2) Does the defendant meet the threshold for extraordinary and compelling circumstances? 3) Do the defendant's 3553(a) factors support compassionate release? The 3553(a) factors weigh the defendant's sentence on whether it is fair and equitable, does it protect the public and will it deter the defendant from future crime. We shall examine all three. First, because Maly was sentenced to the mandatory minimum the sentence was both fair and equitable however the court has gone on record that it would have considered and possibly granted a downward departure supported by the Probation Office and his psychosexual evaluation if possible. Also, it must be considered that the child pornography laws were written at a time prior to the internet. When these laws were created, perpetrators of this crime exchanged actual photos, polaroids, and films depicting underage people. Today, you can click a link on Twitter, Instagram, or other social media outlets and get entire collections of pornography in less than 30 minutes.

As for protecting the public, throughout this ordeal it was clear to each court that Maly found himself in that he had accepted responsibility and was not a risk to the public as each court let him out to live at home pre-trial. In fact in most sex offender cases if the defendant is let out on bond or house arrest prior to sentencing they are remanded at sentencing. Maly on the other hand, was able to continue to remain at home with an ankle monitor until he reported to FCC Butner. Prior to this crime Maly had never committed a crime and in this crime he downloaded images amongst others that happened to be child pornography. Maly does not excuse this behavior and has repeatedly taken responsibility for his actions and he is also clearly no danger to the public.

It is of the utmost importance that this honorable court take into consideration that Maly is a non-touch offender. As of late, the term "Digital Offender" has been used to classify those offenders who have simply downloaded or received child pornography. "Current empirical literature casts serious doubt on the existence of a substantial relationship between the consumption of child pornography and the likelihood of a contact sexual offense against a child. For example, one recent study that followed 231 child pornography offenders for six years after their initial offenses found that only nine persons or 3.9 percent of the sample, committed even a non-contact sexual offence; only two persons or 0.8 percent of the sample, committed a contact offence." ( Jertme Endrass et al., "The Consumption of Internet Child Pornography and Violent Sex Offending, 9 BMC Psychiatry 43 (2009) They also concluded that the consumption of child pornography alone does not seem

to represent a risk factor for committing hands on offenses." (see United States v. Harry George Prassenos II, U.S. Dist. Lexis 17818, E.D.. Virginia, Richmond 3:20-cr-53, January 29, 2021.

Also, as to protecting the public, Concepcion v. United States of America (142 S.Ct 2389; 213 L ed 2d 731 2022 U.S. Lex 3070- 29 FLA L. weekly Fed S. 536 No. 20-1650, 6/27/2022,) allows the district court to now consider a defendant's .behavior and performance prior to and in prison when considering motions such as this. While it is argued that not getting in trouble is what is expected of an inmate, Maly far exceeds even that expectation. In prison Maly has had 0 (zero) disciplinary infractions. He holds a prison job as a GED tutor. He also teaches American Sign Language and teaches other "Adult Continuing Education" or ACE classes. He is a peer leader on his housing unit. A similarly situated defendant from this district, Jack Steven VanLaar had similar positive, rehabilitative conduct in prison. " Since his incarceration, Mr. VanLaar has had no disciplinary or behavioral issues. He has completed 513 hours of educational courses [Maly 320 hours in 2 years] the Drug Education Program and he has paid his special assessment fee [Maly has as well] He has worked steadily in prison work programs. His April 2022 work performance rating states that Mr. VanLaar goes above and beyond keeping the library in order and he has received satisfactory or better ratings for all areas of work" (U.S. v. Jack Steven VanLaar 2022 U.S. Dist. Lexis 111836, M.D.N.C. 1:13-cr-119, June 24, 2022, where Judge Eagles granted compassionate release for a two time sex offender). Maly compares to VanLaar who received compassionate release in this district for non-medical reasons, in many ways. However it is important to point out that the Bureau of Prisons own custody scoring matrix says that Maly is actually a lower level risk than even VanLaar. Maly's "Male Custody Classification Score" is +1. That score looks at the total characteristics of the inmate along with progress in prison, familial ties, behavior, and violence. Most inmates with +1 scores are over 50 years old and are not sex offenders. At a +1 Maly should have begun his sentence either at a camp or in a non-custodial situation. "The court can also consider post-sentencing conduct" (see Pepper v. United States 490-93 131 S. Ct 1229, 179 L. ed 2d 196 2011). "Dunlap has participated in or taught over 30 educational courses, held a job within the BOP, incurred no infractions and otherwise been a model prisoner" (see United

State v. Tracy Calvin Dunlap Jr 458 F. Supp 3d 378; 2020 U.S. Dist Lexis 76337, (this court) M.D.. N.C. 102-cr-165-1 April 29, 2020.)  "In his motion for reconsideration, Baldwin highlights additional efforts at rehabilitation his counsel did not highlight in Baldwin's prior motion, particularly work in the Unicor Program making furniture.  Baldwin has no infractions... The court agrees that these achievements and considerations should be taken into account in resentencing..." (United States v. Thomas Baldwin, (this court) M.D.N.C. 2021 U.S. Dist Lexis 31608, 1:08-cr-315-1 February 19, 2021.)

It is important to also point out when considering Maly's 3553(a) factors that prior to Federal authorities assuming his case, he had been arrested on the same conduct by the state where he remained out on bond, without an ankle monitor for nearly a year since being confronted by law enforcement in 2020.   Also when the U.S. government finally picked up his case they notified Maly by cell phone at which time he self surrendered at the agreed upon location.  H never missed a court date, including sentencing where counsel advised him that he would most likely be remanded. Looking at the holistic inmate Judge Schroeder let Maly remain on ankle monitor until self surrender. Maly also never asked for an extension to self report for any reason even though his date was December 7, 2021 when usually defendants self surrendering in December try to postpone until after the holidays.

Finally, in another overwhelming factor supporting Maly's rehabilitation and 3553(a) factors, in regards to both the safety of the public and fair and equitable sentencing we look to the United States of America v. Noah Culler (see 1:22-cr-00099, M.D.N.C. Schroeder) here in this court. In this case, the defendant, Noah Culler was in his early 20's, short, small in stature and soft spoken. Culler was charged with receipt and pled down to possession with a comparable amount of media downloaded as Maly. Both Maly and Culler were at Butner together. Culler received a year and one day and is home now. More importantly they have the same stellar prison record, both remained on ankle monitor until self reporting, and really improved themselves while at Butner. Maly believes, that had his counsel brought up the possibility of possession v. receipt, this court would have highly considered that argument which is consistent with the circuit.  Although Maly plead guilty to receipt of child pornography rather than possession, "there is no significant factual difference in his conduct and the conduct of a defendant charged with possession. All individuals who possess child pornography, must have, at some point received it." (United States v. Hambrock, US Dist Lexis 39885 520 F. Supp. 3d 827 E.D. Virginia, February 19, 2021).

CONCLUSION

We have clearly demonstrated that Maly should be free to proceed on the merits as this is an emergency situation where his healthcare needs are not being addressed. Maly has several factors which exceed the threshold for "extraordinary and compelling" reasons to warrant release under the statute including; 1) Maly is small in stature, pan sexual (bi), gender fluid,

putting him in a very vulnerable position. 2) Maly's pre-trial and post conviction behavior are extraordinary and worth considering. 3) he suffers from hypothyroidism, a chronic condition that goes untreated for months. 4) He has Ehlers-Danlos Syndrome which is causing him great pain and the BOP refuses to treat. 5.) He is misclassified as a medical care level 1 even though he has a chronic condition, and a mental health care 1 even though he is transgendered. And finally, Maly's 3553(a) factors overwhelmingly support compassionate release.

Respectfully submitted this __11th__ day of October 2023.

Eric Zachary Maly

# NPR BLASTS SUBSTANDARD BOP HEALTHCARE

shocked191024In a revelation that will not shock a single prisoner in Bureau of Prisons custody, NPR reported last Saturday that the BOP has been misrepresenting the accreditation of its healthcare facilities while compiling a record of ignoring or delaying medical treatment  especially in cancer care  leading to needless inmate disability and death.

NPR said it had obtained hundreds of BOP records that showed, among other things, that over 25% of the almost 5,000 inmates who died in federal custody from 2009 to 2020 died in a single place: FCC Butner. According to NPR's analysis, more BOP prisoners died of cancer than any other cause from 2009 to 2020.

NPR admits that more deaths at Butner are to be expected, given the complex includes FMC Butner, the system's largest cancer treatment facility. However, NPR reported, it found

numerous accounts of inmates nationwide going without needed medical care. More than a dozen waited months or even years for treatment, including inmates with obviously concerning symptoms: unexplained bleeding, a suspicious lump, intense pain. Many suffered serious consequences. Some  did not survive. Too often, sources told NPR, federal prisons fail to treat serious illnesses fast enough. When an ailment like cancer is caught, the BOP often funnels these sick inmates to a place like Butner, where it is assumed they'll receive more specialized treatment. But by the time prisoners access more advanced care, it's sometimes too late to do much more than palliative care. What's more, current and former inmates and staff at Butner told NPR the prison has issues of its own, including delays in care and staffing shortages."

The NPR report caught the BOP in a falsehood. The agency says on its website that "Federal Medical Centers (FMCs) are accredited by the Joint Commission," the nation's leading healthcare accreditation agency. But NPR said that was untrue, that in fact, the BOP's certification lapsed two years ago. When confronted, a BOP spokesperson said that regardless of the lapsed accreditation, the agency adheres to Joint Commission standards.

dirtykitchen230925You know: "Our kitchen may not have been inspected by the health department, but we assure you it's clean."

Sources NPR interviewed say federal inmates  "a group with a constitutional right to health care yet without the autonomy to access it on their own;" NPR said  are dying more often than they should. "Deaths in custody should be rare events, given that this is such a controlled environment," says Michele Deitch, director of the University of Texas at Austin's Prison and Jail Innovation Lab. "Are there preventable deaths happening in the BOP? The answer to that is clearly yes."

NPR quoted an anonymous BOP medical staff member at Butner who said she has heard stories like theirs "so many times  So many inmates have told me, 'I complained about this lump, or I complained about this pain for so long, and they only gave me cream, they only gave me Motrin, they never sent me out for tests or anything. Now they send me here and I have Stage 3 or Stage 4 cancer. Our question is always: What took them so long to get to us, and why did they send them to us when there's nothing that we can do?"

DrNoBOPHealth230925Art Beeler, a former Butner warden, told NPR it was hard to see inmates arrive at the FMC with late-stage cancer. "It did not happen every day or even every week, but there were cases we received late, and every one of them was frustrating," Beeler said. "If we received someone who had Stage 4 prostate cancer, who showed indicators early on in the process, we were very frustrated  We knew more than likely the patient would live if they had received treatment early on."

In March 2022, the Dept of Justice Inspector General audited the BOP's contract with one of the contractors providing some of the medical services at Butner. The report found the BOP "did not have a reliable, consistent process in place to evaluate timeliness or quality of inmate healthcare."

The IG report also noted "challenges in transporting inmates to off-site appointments which resulted in a frequent need to reschedule appointments that could delay an inmate's healthcare." The contractor told the Inspector General that their staff spent a "significant amount of time" canceling and rescheduling inmate appointments."

"We believe it is difficult for the BOP to determine whether inmates are receiving care within the required community standard,"

the report noted.

Delshon Harding, president of the local union representing Butner officers, told NPR he believes staff shortages are the primary reason inmates go without essential care.

healthbareminimum220603A report issued last week by three federal agencies   including DOJ   concurs. The report found that as of March 2022, 89% of all BOP facilities had one or more clinical position vacancies. Thirteen prisons lacked any staff medical officer. The report noted that "although direct patient care responsibilities can be covered by mid-level practitioners, these types of critical vacancies may require the BOP to bring in staff from other locations on temporary duty assignments, or to use short-term emergency contracts to fill the gaps."

The report found that only 69% of BOP medical officer positions were filled.

NPR, 1 in 4 inmate deaths happens in the same federal prison. Why? (September 23, 2023)

BOP, Medical Care (last visited September 23, 2023)

Dept of Justice, Audit of the Federal Bureau of Prisons Comprehensive Medical Services Contracts Awarded to the University of Massachusetts Medical School (March 2022)

Veterans Administration, Review of Personnel Shortages in Federal Health Care Programs During the COVID-19 Pandemic (September 21, 2023)

Thomas L. Root

---------------------------------------------------------------------------------------------------------------

FROM: BUF/Health Systems Administrator
TO: 38932509
SUBJECT: RE:***Inmate to Staff Message***
DATE: 07/13/2023 02:22:02 PM

we do not do genetic testing in BOP, that seems to be the only way to diagnose the syndrome. Updated labs ordered to check thyroid

These are some of the symptoms for that syndrome:

* Over flexible joints, smaller joints being more affected
* Loose joints that dislocate easily
* Joint pain
* Stretchy and fragile skin that bruises easily
* Soft and velvety skin
* Non-healing damaged skin
* Muscle pain
* Extreme tiredness
* Dizziness
* Increased heart rate, especially after standing
* Digestive problems such as heartburn and constipation
* Urinary incontinence
* Heart valve problems
* Protruding eyes

From: ~^! MALY, ~^!ERIC ZACHARY <38932509@inmatemessage.com>
Sent: Friday, June 30, 2023 6:03 PM
Subject: ***Request to Staff*** MALY, ERIC, Reg# 38932509, BUF-W-B

To: PA Dowrich
Inmate Work Assignment: Education Tutor

Ms. Dowrich,

I was recently informed by my mother that I have a relative that has Ehlers-Danlos Syndrome (EDS). I am aware that this is a genetic condition and could have been passed on to me. I did not disclose this in my family medical history due to not knowing. Is there any test that can be done for this and what do I need to be on the lookout for?

Also, should I be on the lookout for another blood panel test to make sure that my Thyroid levels are good?

Thank you for your time and help with this!



| Facility: | BUF BUTNER LOW FCI | Proj. Rel. Date: | 03-03-2026 |
| Name: | MALY, ERIC ZACHARY | Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| Register No.: | 38932-509 | DNA Status: | BUF04550 / 12-07-2021 |
| Age: | 36 | | |
| Date of Birth: | 09-24-1986 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BUF | EDU TUTOR | EDUCATION TUTOR 7:30-2:30 | 04-19-2023 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BUF | ESL HAS | ENGLISH PROFICIENT | 12-16-2021 |
| BUF | GED HAS | COMPLETED GED OR HS DIPLOMA | 12-16-2021 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| BUF | | BUILDING TRADES CARPENTRY | 04-04-2023 | CURRENT |
| BUF | | CARPENTRY PROGRAM | 05-31-2022 | CURRENT |
| BUF | C | AMERICAN SIGN LANGUAGE 1 | 03-06-2023 | 04-28-2023 |
| BUF | C | CORE CLASS (12:30-3:30) | 05-31-2022 | 04-04-2023 |
| BUF | C | INTRO TO RECREATION FACILITIES | 02-04-2023 | 02-04-2023 |
| BUF | C | S-ACT WORK KEYS | 08-01-2022 | 10-21-2022 |
| BUF | C | SPANISH 1 (UB) | 10-11-2022 | 10-31-2022 |
| BUF | C | LIFE SKILLS MATH-INTEREST & % | 08-10-2022 | 09-02-2022 |
| BUF | C | CREATIVE WRITING | 08-10-2022 | 09-02-2022 |
| BUF | C | REENTRY UB | 06-13-2022 | 07-07-2022 |
| BUF | C | RECONSTRUCTION | 04-28-2022 | 05-23-2022 |
| BUF | C | BUSINESS | 04-01-2022 | 04-22-2022 |
| BUF | C | ECOLOGY | 04-01-2022 | 04-22-2022 |
| BUF | C | GREEN LIVING (UB) | 02-24-2022 | 03-22-2022 |
| BUF | C | CIVIL RIGHTS | 02-24-2022 | 03-22-2022 |
| BUF | C | DAY CLASS FOR DRUG EDUCATION | 02-25-2022 | 03-07-2022 |
| BUF | C | INTRODUCTION TO HOBBYCRAFT | 01-12-2022 | 01-14-2022 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

*** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 12-13-2021 |
| CARE1-MH | CARE1-MENTAL HEALTH | 12-14-2021 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 12-07-2021 |
| REG DUTY W | REGULAR DUTY W/MED RESTRICTION | 10-24-2022 |
| SOFT SHOES | SOFT SHOES ONLY | 10-24-2022 |
| YES F/S | CLEARED FOR FOOD SERVICE | 12-13-2021 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP UNQUAL | RESIDENT DRUG TRMT UNQUALIFIED | 07-15-2022 |
| ED COMP | DRUG EDUCATION COMPLETE | 03-07-2022 |



**Individualized Needs Plan - Program Review** (Inmate Copy)
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MALY, ERIC ZACHARY  38932-509

SEQUENCE: 02260690
Team Date: 05-15-2023

## FRP Payment Plan

Most Recent Payment Plan

| FRP Assignment: | PART | FINANC RESP-PARTICIPATES | Start: 02-02-2022 |
|---|---|---|---|

| Inmate Decision: | **AGREED** | $25.00 | Frequency: **QUARTERLY** |
|---|---|---|---|

Payments past 6 months:  **$50.00**      Obligation Balance: **$38,975.00**

### Financial Obligations

| No. | Type | Amount | | Balance | Payable | | Status | |
|---|---|---|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | | $0.00 | IMMEDIATE | | COMPLETEDZ | |
| | | Adjustments: | Date Added | Facl | Adjust Type | Reason | | Amount |
| | | | 03-10-2023 | BUF | PAYMENT | INSIDE PMT | | $25.00 |
| 2 | REST NV | $38,000.00 | | $37,975.00 | IMMEDIATE | | AGREED | |
| | | Adjustments: | Date Added | Facl | Adjust Type | Reason | | Amount |
| | | | 06-10-2023 | BUF | PAYMENT | INSIDE PMT | | $25.00 |
| 3 | MISC | $1,000.00 | | $1,000.00 | IMMEDIATE | | AGREED | |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | | | | |

## FRP Deposits

Trust Fund Deposits - Past 6 months:  $955.20      Payments commensurate ?  N/A

New Payment Plan:  ** No data **

## Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 12-13-2021 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 01-27-2022 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 08-21-2023 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 08-21-2023 |
| N-COGNTV N | NEED - COGNITIONS NO | 08-21-2023 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 12-16-2021 |
| N-EDUC N | NEED - EDUCATION NO | 08-21-2023 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 08-21-2023 |
| N-FM/PAR Y | NEED - FAMILY/PARENTING YES | 08-21-2023 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 08-21-2023 |
| N-MEDICL N | NEED - MEDICAL NO | 08-21-2023 |
| N-RLF Y | NEED - REC/LEISURE/FITNESS YES | 08-21-2023 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 08-21-2023 |
| N-TRAUMA Y | NEED - TRAUMA YES | 08-21-2023 |
| N-WORK N | NEED - WORK NO | 08-21-2023 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 08-21-2023 |

## Progress since last review

Completed Intro to Recreation Facilities, Core Class, and American Sign Language 1.
Work detail Education Tutor.

## Next Program Review Goals

Continue Carpentry and Building Trades Carpentry to completion.
Previous recommendations remain the same: Enroll in Money Smart and Cognitive Skills Trauma. Enroll in a Rec/Leisure class.

## Long Term Goals

Complete the NRES Drug program by 03-2026. Complete ROP by 03-2026. Obtain SS card by 03-2026. Save $5 or more each month toward release preparation thru 03-2026. Maintain contact with family and friends to strengthen community ties in preparation for release thru 03-2026.

## RRC/HC Placement

No.
Management decision - will review 17 - 19 months from release. .

## Comments

** No notes entered **

---


Name: MALY, ERIC ZACHARY      DNA Status: BUF04550 / 12-07-2021
Register No.: **38932-509**
Age: 36
Date of Birth: 09-24-1986

Inmate    (MALY, ERIC ZACHARY. Register No.: 38932-509)

_____

Date

_____
Unit Manager / Chairperson

       _____
       Case Manager

_____
Date

       _____
       Date

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 38932-509 | Responsible Facility: BUF |
| Inmate Name | Assessment Date.....: 08/21/2023 |
|   Last.........: MALY | |
|   First........: ERIC | |
|   Middle.......: ZACHARY | |
|   Suffix.......: | |
| Gender.........: MALE | |

## Needs Reassessment Worksheet Summary

| Need Area | – Before/After – | Assignment | – Description |
|---|---|---|---|
| Anger/Hostility | Before | N-ANGER N | NEED – ANGER/HOSTILITY NO |
| | After | N-ANGER N | NEED – ANGER/HOSTILITY NO |
| Antisocial Peers | Before | N-ANTISO N | NEED – ANTISOCIAL PEERS NO |
| | After | N-ANTISO N | NEED – ANTISOCIAL PEERS NO |
| Cognitions | Before | N-COGNTV N | NEED – COGNITIONS NO |
| | After | N-COGNTV N | NEED – COGNITIONS NO |
| Education | Before | N-EDUC N | NEED – EDUCATION NO |
| | After | N-EDUC N | NEED – EDUCATION NO |
| Family/Parenting | Before | N-FM/PAR Y | NEED – FAMILY/PARENTING YES |
| | After | N-FM/PAR Y | NEED – FAMILY/PARENTING YES |
| Finance/Poverty | Before | N-FIN PV Y | NEED – FINANCE/POVERTY YES |
| | After | N-FIN PV Y | NEED – FINANCE/POVERTY YES |
| Medical | Before | N-MEDICL N | NEED – MEDICAL NO |
| | After | N-MEDICL N | NEED – MEDICAL NO |
| Mental Health | Before | N-M HLTH N | NEED – MENTAL HEALTH NO |
| | After | N-M HLTH N | NEED – MENTAL HEALTH NO |
| Recreation/Leisure/Fitness | Before | N-RLF Y | NEED – REC/LEISURE/FITNESS YES |
| | After | N-RLF Y | NEED – REC/LEISURE/FITNESS YES |
| Substance Abuse | Before | N-SUB AB N | NEED – SUBSTANCE ABUSE NO |
| | After | N-SUB AB N | NEED – SUBSTANCE ABUSE NO |
| Trauma | Before | N-TRAUMA Y | NEED – TRAUMA YES |
| | After | N-TRAUMA Y | NEED – TRAUMA YES |
| Work | Before | N-WORK N | NEED – WORK NO |
| | After | N-WORK N | NEED – WORK NO |

Case 1:21-cr-00107-TDS    Document 44    Filed 10/18/23    Page 17 of 27

**U.S. DEPARTMENT OF JUSTICE**      **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 38932-509 | Risk Level Inmate....: R-LW |
| Inmate Name |   General Level......: R-LW (7) |
|   Last.........: MALY |   Violent Level......: R-MIN (4) |
|   First........: ERIC | Security Level Inmate: LOW |
|   Middle.......: ZACHARY | Security Level Facl..: LOW |
|   Suffix.......: | Responsible Facility.: BUF |
| Gender.........: MALE | Start Incarceration..: 12/07/2021 |

**PATTERN Worksheet Details**

Item: Programs Completed, Value: 11

General Score: -12, Violent Score: -4

Risk Item Data

| Category | Assignment | Start | Stop |
|---|---|---|---|
| DRG | ED COMP | 03/07/2022 13:46 | |
| EDC | GRNLVG(UB) | 02/24/2022 08:52 | 02/24/2022 08:52 |
| EDC | CIVILRIGHT | 02/24/2022 08:58 | 02/24/2022 08:58 |
| EDC | BUSINE(UB) | 04/01/2022 13:27 | 04/01/2022 13:27 |
| EDC | ECOLO(UB) | 04/01/2022 13:28 | 04/01/2022 13:28 |
| EDC | RESTRN(UB) | 04/28/2022 19:11 | 04/28/2022 19:11 |
| EDC | REENTRY | 06/13/2022 11:40 | 06/13/2022 11:40 |
| EDC | MATHSK(UB) | 08/10/2022 13:00 | 08/10/2022 13:00 |
| EDC | CREATE(UB) | 08/10/2022 13:01 | 08/10/2022 13:01 |
| EDC | SPNSH1(UB) | 10/11/2022 08:09 | 10/11/2022 08:09 |
| EDC | ASL1 | 03/06/2023 09:39 | 03/06/2023 09:39 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Item: Work Programs, Value: 2

General Score: -2, Violent Score: -2

Risk Item Data

| Category | Assignment | Start | Stop |
|---|---|---|---|
| EDC | ACT WRKEYS | 08/01/2022 13:17 | 08/01/2022 13:17 |
| WRK | FPI MAINT | 03/04/2023 13:56 | 03/04/2023 13:56 |

Case 1:21-cr-00107-TDS    Document 44    Filed 10/18/23    Page 18 of 27

## (A) IDENTIFYING DATA

REG NO..: 38932-509     FORM DATE: 08-25-2023     ORG: BUF

NAME....: MALY, ERIC ZACHARY

MGTV: NONE

PUB SFTY: SEX OFFN     MVED:

## (B) BASE SCORING

DETAINER: (0) NONE     SEVERITY.......: (5) HIGH

MOS REL.: 30     CRIM HIST SCORE: (00) 0 POINTS

ESCAPES.: (0) NONE     VIOLENCE.......: (0) NONE

VOL SURR: (3) VOL SURR     AGE CATEGORY...: (2) 36 THROUGH 54

EDUC LEV: (0) VERFD HS DEGREE/GED     DRUG/ALC ABUSE.: (1) <5 YEARS

## (C) CUSTODY SCORING

TIME SERVED.....: (4) 26-75%     PROG PARTICIPAT: (2) GOOD

LIVING SKILLS...: (2) GOOD     TYPE DISCIP RPT: (5) NONE

FREQ DISCIP RPT.: (3) NONE     FAMILY/COMMUN..: (4) GOOD

## --- LEVEL AND CUSTODY SUMMARY ---

| BASE | CUST | VARIANCE | SEC TOTAL | SCORED LEV | MGMT SEC LEVEL | CUSTODY | CONSIDER |
|------|------|----------|-----------|------------|----------------|---------|----------|
| +5 | +20 | -4 | +1 | LOW | N/A | IN | DECREASE |

G0005     TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

10/12/21 Sentrol
12/7/21 report
M. D. N. C.

--------------------------------------------------------------------------------

FROM: 38932509
TO: BUF/Associate Warden
SUBJECT: ***Request to Staff*** MALY, ERIC, Reg# 38932509, BUF-W-B
DATE: 09/25/2023 05:08:36 PM

To: Warden K. Heckard
Inmate Work Assignment: Education Tutor

Warden Heckard,

I am writing to seek Compassionate Release under Emergency Circumstances as proscribed in 18 USC 3582 (c)(1)(a), where "extraordinary and compelling circumstances" are present. The following is a list of the "extraordinary and compelling circumstances".

1) I have a documented Thyroid problem which has a family history of three (3) members having Thyroid Cancer and one (1) having Hashimoto's Syndrome (an autoimmune disorder where the body attacks the Thyroid Gland). I came into the BOP with this documented medical issue and have had to put in cop outs to staff to be tested regularly and to receive said results from these same tests, the last of which was received a month and a half after the test was completed.

2) I have a possibly undiagnosed genetic disorder of Ehlers-Danlos Syndrome. This is a degenerative connective tissue disorder. The BOP refuses to do genetic testing and this is the only way to diagnose it, however, when I asked my PA, I was positive for 11 out of the major 14 symptoms. The major issue with this is that I have had issues with my neck and back that have been getting worse since my arrival here at Butner. I have had X-rays, but have not heard anything back from them.

3) This feeds into Butner losing accreditation from the American Hospital Association. I can have better medical care from any outside facilities, plus having a medical facility diagnose my possible Ehlers-Danlos. To further point to this, when I broke my collarbone in 4 places last year, Butner just let it set itself and it seems to have improperly healed, thus making me lose some mobility and strength in my left arm.

4) My prison record is impeccable. I have kept a job, been free of any incident reports while here at Butner, and have contributed to the prison itself, through my job of being an Education Tutor. In the previous fiscal year, I helped 34 inmates receive their GED.

5) My pre-trial, pre-sentencing, and time before surrender were also impeccable. I was on home detention for 8 months with no issues, no incidents, and a stellar record with my probation officer.

Thank you for your time and consideration in this matter. I understand the gravity of this decision and await to hear back from you.

--------------------------------------------------------------------------------

FROM: 38932509
TO: BUF/Medical Records
SUBJECT: ***Request to Staff*** MALY, ERIC, Reg# 38932509, BUF-W-B
DATE: 09/24/2023 08:48:57 PM

To: Records
Inmate Work Assignment: Education Tutor

I would like to request a copy of my medical records.  Thank you.

--------------------------------------------------------------------------------

FROM: 38932509
TO:
SUBJECT: Release Plan
DATE: 10/10/2023 12:14:45 PM

Release Plan for Eric Zachary Maly:

1) Housing - I plan to live at 5769 Mack Simmons Road, Fayetteville, NC, 28312. This is my grandmother's (my father's mother) house, although she currently lives in assisted living in Harmony at Hope Mills.

2) Employment - I plan to work as a Contract Administrator for MFC Brands, LLC. I have this job available upon release and I will be able to work remotely. Through this job, I will be able to afford my food, utilities, and other bills.

3) Transportation - I own a 2017 Mazda 3 that is still in running order. My North Carolina Driver's License (#25371559) is still valid.

4) Support - My parents will be living near me at 5268 Dudley Road in Fayetteville, NC. Their residence is less than 1/4 of a mile from my proposed future residence. I will also have a network of friends available for any support in Morrisville, NC; Mebane, NC; High Point, NC; and Kinston, NC.

5) Health Insurance - The aforementioned employment with MFC Brands, LLC has a plan through Cigna health, which allows for $25 copays for any doctor visit, $25 copays for all medications, and $25 copays for any mental health treatments. This will allow me to continue the care of my Thyroid condition, as well as get a diagnosis for EDS, and receive the mental health treatment that has been lacking within the BOP.

6) Healthcare - My primary care physician will be Dr. Bui at AA All-American Family Healthcare at 1756 Metro Medical Drive, Fayetteville, NC, 28304 with a phone number of (910) 485-8831. This is currently my mother's primary care physician and they are accepting new patients, so I will be able to schedule visits with them.

To The Honorable Judge Schroeder:

I am including this letter to you as an elective correspondence as well as a written statement on my own behalf as a record of sorts for consideration by the Court.

As I stated at my sentencing, I am deeply remorseful for any further pain, anguish, and suffering that my actions caused any of the victims. In my time of incarceration, I have seen the effect that my actions have had on those that are not myself or the victims. I have lost valuable friends, a relationship with the person I considered most important in this world, and I have seen the toll that this has taken on my family.

For starters, I have been ostracized by a good portion of my previous social groups. I do not say that it is without merit or reason, since social stigma and pressures can play a good amount into that. In that same vein, those that have decided to stand by me do so at great personal risk of their own social standing or do so surreptitiously, as one has stated that he "removed me as a friend on Facebook for appearances' sake". I do not wish to devalue or discredit the hardship that those friends that stick with me have been enduring, but they have been a source of stability and I will continue to keep them in my life to keep myself grounded.

Continuing in that, due to everything attached to this present situation, I have damaged, perhaps permanently, a person that I held in extremely high regard. As the Court can verify, I had a character letter in my file written by one Ms. Chayne Ryon. Ms. Ryon and I had been romantically involved at the time of all three arrests and was present

during my sentencing, even though we were not involved at that time. I understood that my actions affected Ms. Ryan, but I failed to grasp the full extent. Ms. Ryan has confided in others that she has nightmares of the arrests, she has PTSD from the same (so much so that a recent visit of an officer to her residence for an entirely unrelated matter left her in a panicked state), and diminished capacity for trust and meeting people in general. Previous to our relationship, Ms. Ryan lost both parents in a traumatic way: her mother to a sudden illness and her father to suicide. As a friend to Ms. Ryan, I was aware of this and I wanted to help her as much as I could. As a partner, I sought to provide her with safety and stability. Once I was able to, after 6 years of attempting to date her, I helped her move away from Wilmington and provided her with opportunity at a new life and happiness. That all came crashing down, due to my actions and the subsequent arrests. I now understand that Ms. Ryan may never be the same again and to know that I destroyed a loving, caring, fun, and all-around wonderful person to the point where she may not be the same again fills me with such regret to where I see myself as no better than another former love of hers that was physically abusive to her.

To take this in another direction, I have also seen the toll this has taken on my family. First and foremost, my family has lost very important and long-standing family friends, through no fault of theirs, except for guilt by association with me. Soon after I was incarcerated, my parents were informed, through a set of mutual friends (that they no longer speak to either), that a longtime family friend was just cutting contact. This friend, it was later found out, spread lies involving me to others that my parents socialized with.

None of the actions or acts previously described are lost on me. I fully understood that my actions come with consequences. However, these consequences are not just something I have to face, but my crime is one that my future self has to face, my friends must face, and my family must face. If I were guilty of any other offense, I have very little doubt that my friends and family would have backlash, but I am adamant that they would not be to this point. The fact that just those that choose to associate with me are just as guilty in the eyes of society is indicative of the harsh punishment that sex offenders face.

I am agonizingly cognizant of the fact that, as a sex offender, I face a harsher punishment in society than any other type of offender. I face a longer supervised release period with arguably more onerous terms imposed upon me. I face the registry, which is a special condition imposed on the group of offenders with the lowest risk of recidivism. Both of these have me paying for my crime in the court of public opinion, which can be more damaging and damning to one's well-being that can cause more lasting effects than any active incarceration.

Any other crime would not have had the adjacent effects on those around me. Any other crime would not have me continuing to suffer for a lapse in judgment a decade from now. Any other crime would see my "debt to society" repaid upon exiting the prison. The offense that I committed is a serious one, but no amount of penitence will erase the stigma that not only I carry, but also my friends and family will carry for just associating with me. I am in no way attempting to downplay the conduct I am guilty of. Please let me be completely clear of that. I am only wanting to say that if the punishment needs to fit the crime and act as a deterrence, it has succeeded.

My period of incarceration is even further than it was necessary to go. I heard the lesson and took it to heart in 2021, during my first arrest. This entire experience has given me the respect for the law that I should have had in the first place. I deserve punishment and will continue to answer for my crime after incarceration for an extraordinary amount of time. However, my family and friends do not deserve to be punished and that is the true reality and cost of sex offender laws.

I respectfully beseech the Court to please consider the effects of the sentence, both upon myself (respect for the law and deterrence), but also upon innocent bystanders. The consequences of my actions are inescapable and I am prepared to face them. I feel that it is unnecessary for those innocent of my present charge to be judged as harshly as myself through no fault of their own.

Thank you for your time and consideration.

Sincerely,